**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000592
28-JAN-2019
03:34 PM**

NO. CAAP-15-0000592

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

RC, Plaintiff-Appellant, v.
MC, Defendant-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 13-1-1041)

AMENDED MEMORANDUM OPINION
(By: Ginoza, C.J., and Leonard and Reifurth, JJ.)

In this divorce proceeding, Plaintiff-Appellant RC ("Father") appeals from the July 28, 2015 Decree Granting Absolute Divorce and Awarding Child Custody ("Divorce Decree") entered by the Family Court of the First Circuit ("Family Court").[1]

On appeal, Father challenges Findings of Fact ("FOFs") 18, 19, 20, 21, 22, 23, 24, 28, 40(d-q), 42, 43, 44, and 47 and Conclusions of Law ("COLs") 4, 5, 10, 11, 13, and 14(b-c), 14(e). Father alleges that the Family Court erred in: (A) awarding sole legal and physical custody of the couple's four year-old child ("Child") to Defendant-Appellee MC ("Mother"); (B) calculating child support owed by Father to Mother; and (C) denying Father's request to divide marital debts, for Mother to share in the custody evaluator's fee, and for Mother to reimburse Father for legal expenses made necessary by Mother's false claims of spousal abuse.

---

[1]     The Honorable Linda S. Martell presided over the trial and issued the Divorce Decree.  The Honorable Kevin J. Souza presided over the pre-decree relief proceedings, which are unchallenged.

For reasons discussed below, we vacate and remand the Divorce Decree as it relates to marital debt and reimbursement for the custody evaluator, and affirm in all other respects.

I.    BACKGROUND

Mother and Father were married from August 9, 2011 until July 28, 2015. Child was born on November 12, 2011. On May 10, 2013, Father and Mother had a dispute that resulted in criminal charges being filed against Father in FC-CR No. 13-1-1544, and in Father and Mother separating. Father was later acquitted of the charges.

On July 10, 2013, Father filed a Complaint for Divorce against Mother. Both parties filed motions and declarations for pre-decree relief. On November 6, 2013, the Family Court held a hearing to address both motions and granted joint temporary legal and physical custody of Child to the parties. On November 21, 2013, Father filed a second motion for pre-decree relief, which resulted in the mutual agreement to appoint Marvin W. Acklin, Ph.D, as the parties' custody evaluator. On May 22, 2014, Dr. Acklin's Custody Evaluator's Report was filed. Between February 12, 2014 and the start of trial, Father filed three additional motions for pre-decree relief, and Mother filed a second motion for pre-decree relief.

At the September 5, 2014 hearing to address the remaining motions for pre-decree relief, the Family Court warned Father about his behavior towards Mother and ordered Father to stop documenting every bruise or scratch on Child, which the Family Court characterized as "borderline child abuse" and a tactic meant to "berate [Mother] into submission." The Family Court emphasized that this was Father's final opportunity for joint custody of Child and, if the custody issue arose again, the Family Court would make a different decision.

On March 9, 10, and 17, 2015 a three-day trial was held during which Dr. Acklin, Mother, and Father testified. Dr. Acklin noted, in relevant part, Father's "coercive and controlling behavior" towards Mother, and Mother's "earnest and nonreciprocal" manner in which she responded to Father. While

2

emphasizing the importance of the custodial parent's responsibility to facilitate access to the child for the other parent, Dr. Acklin concluded that Mother would likely be a more facilitative parent. The Family Court found Dr. Acklin's testimony credible, and gave it significant weight.

Mother testified, in relevant part, that she was Child's primary caregiver, that Father did not want Mother to work, and that she was unwilling to pay Father's credit card debt because he incurred it prior to their marriage. Mother also commented on Father's controlling, aggressive, and derogatory behavior towards her. The Family Court found Mother's testimony was "credible, generally consistent with the evidence presented," and gave it significant weight.

Father testified, in relevant part, that he refinanced his mortgage to pay off $30,000 in debt, but still had approximately $49,000 of marital debt on his Visa credit card, and commented on Mother's abusive behavior towards him, and his reasons for filing temporary restraining orders against Mother. The Family Court did not find Father's testimony at trial, where in conflict with Mother's testimony, to be credible, and did not give Father's testimony significant weight.

The Family Court filed its Decision and Order on May 28, 2015, and the Divorce Decree on July 28, 2015. Father timely appealed the Divorce Decree to this court on August 21, 2015.

On December 10, 2015, the Family Court filed its Findings of Fact and Conclusions of Law, which concluded, in relevant part, that it was in the best interest of Child to award Mother sole legal and physical custody of Child; that it was fair and equitable to deny Father's request for reimbursement of legal expenses incurred in defending his criminal case under FC-CR No. 13-1-1544, as the case was brought by the State, not Mother; that it was fair and equitable to deny Father's request for reimbursement of credit card and cell phone bills, especially considering that he retained all interest and any appreciation on the marital residence; that it was fair and equitable for [Mother] to be responsible for 20% of the Custody Evaluator's fee

3

in proportion with the parties' gross incomes; that based on calculations pursuant to the Child Support Guidelines Worksheet ("CSGW"), full-time income would not be imputed to Mother until Son began attending preschool or daycare on a full time basis, and in turn, Father would pay child support to Mother in the sum of $1,061.00 per month; and that the provisions of the Divorce Decree were properly made, fair and equitable.

II. STANDARDS OF REVIEW

*Family Court Decisions*

> Generally, the "family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion." *In re Jane Doe, Born on May 22, 1976*, 84 Hawai'i 41, 46, 928 P.2d 883, 888 (1996) (quoting *In re Jane Doe, Born on February 22, 1987*, 77 Hawai'i 109, 115, 883 P.2d 30, 36 (1994)) (internal quotation marks and citation omitted). Thus, we will not disturb the family court's decisions on appeal "unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant ... [and its] decision clearly exceed[ed] the bounds of reason." *Doe*, 84 Hawai'i at 46, 928 P.2d at 888 (quoting *Doe*, 77 Hawai'i at 115, 883 P.2d at 36) (internal quotation marks and citation omitted, brackets in original).

*In re Doe*, 95 Hawai'i 183, 189-90, 20 P.3d 616, 622-23 (2001).

*Family Court's Findings of Facts and Conclusions of Law*

> The family court's FOFs are reviewed on appeal under the "clearly erroneous" standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

> On the other hand, the family court's COLs are reviewed on appeal *de novo*, under the right/wrong standard. COLs, consequently, are not binding upon an appellate court and are freely reviewable for their correctness.

> . . . .

> Moreover, the family court is given much leeway in its examination of the reports concerning a child's care, custody, and welfare, and its conclusions in this regard, if supported by the record and not clearly erroneous, must stand on appeal.

*In re Doe*, 95 Hawai'i at 190, 20 P.3d at 623 (internal quotation marks, citations, brackets, and ellipsis omitted).

III. DISCUSSION

      A.    The Family Court did not abuse its discretion when it awarded Mother sole legal and physical custody of Child.

      In his first point of error, Father alleges that the Family Court abused its discretion when it awarded Mother sole legal and physical custody of Child without citing to any of the relevant factors in HRS section 571-46(b), and disregarded what he characterizes as Mother's attempt to gain a tactical advantage in the custody battle over Child by having him arrested and prosecuted for domestic violence. Father further contends that the Family Court abused its discretion when "it cut Father's 8/6 overnight visitation in half, without explanation, despite requests by both parents to continue weekly 8/6 visitation." To this end, Father disputes FOFs 18, 19, 20, 21, 22, 23, 24, 28, 40(d-q), 42, and 47 and COLs 4 and 14(b-c).

      In custody proceedings, "the paramount consideration . . . is the best interests of the child." *AC v. AC*, 134 Hawai'i 221, 230, 339 P.3d 719, 728 (2014) (ellipses in original) (quoting *Doe v. Doe*, 98 Hawai'i 144, 156, 44 P.3d 1085, 1097 (2002)). HRS section 571-46(b) sets out the factors that the Family Court "shall consider, but not be limited to" in determining the child's best interest. Haw. Rev. Stat. § 571--46(b) (Supp. 2014).

      Father provides no authority to support his contention that the Family Court is required to expressly articulate HRS section 571-46(b) "best interest" factors when making its custody and visitation determinations, and we find none. Father also points to nothing in the record that demonstrates that the Family Court did not consider HRS section 571-46(b) factors in reaching its conclusion that based on the evidence presented, it was in the best interest of Child to grant sole physical and legal custody of Child to Mother, and we discern none. *See Doe v. Doe*, Nos. CAAP-14-0000741, CAAP 14-0001307, CAAP-15-0000525, 2016 WL 3599924, *2 (Hawai'i Ct. App. June 30, 2016) (citing *In re Doe*, 101 Hawai'i 220, 232, 65 P.3d 167, 179 (2003)) (determining that because mother did not show that the family court did not

5

consider HRS section 571-46(b) factors in coming to its conclusion, the Family Court did not abuse its discretion in deciding not to modify legal and physical custody of a child).

Here, the record indicates that the Family Court had substantial evidence upon which it based FOFs 18-24, 28, 40(d-q), 42, and 47. The record shows the multiple TROs that Father and Mother filed against each other in Family Court; discusses Father's criminal arrest based on Mother's allegations, and later his acquittal; documents the emails sent between Mother and Father; contains the Custody Evaluator Report; and provides testimony from witnesses that the Family Court found credible regarding Father's controlling and coercive behavior.[2] Further, at the September 5, 2014 hearing, the Family Court highlighted Father's behavior towards Mother, explained how it adversely affected Child, and warned that it was inclined to give Mother sole legal and physical custody if Father did not demonstrate a change in behavior.

Regarding FOF 40q, and COLs 4 and 14(b-c), Father argues that the Family Court erred in changing his visitation schedule from 8/6 to 11/3 because Mother "wanted the three-night weekend visitation by Father to continue." Mother's concurrence notwithstanding, the law provides that "[r]easonable visitation shall be awarded to parents, grandparents, siblings, and any person interested in the welfare of the child *in the discretion of the court, unless it is shown that rights of visitation are*

---

[2] As to FOF 21, we observe no evidence establishing when Mother was served with temporary restraining orders. Notwithstanding, Father fails to adequately explain how FOF 21 has any bearing on the first point of error; rather, he merely identifies it, and fails to explain how FOF 21 is "inflammatory, irrelevant, more prejudicial than probative, and not supported by the trial record." Accordingly, we decline to address FOF 21. *See Kakinami v. Kakinami*, 127 Hawai'i 126, 144 n.16, 276 P.3d 695, 713 n.16 (2012) (citing *In re Guardianship of Carlsmith*, 113 Hawai'i 236, 246, 151 P.3d 717, 727 (2007) (noting that this court may "disregard a particular contention if the appellant makes no discernible argument in support of that position")). Additionally, we decline to address FOFs 40n, 40o, and 40p which address the credibility of Dr. Acklin, Father, and Mother, as this court will not reassess the credibility of witnesses, as already determined by the Family Court. *See In re Doe*, 95 Hawai'i at 197, 20 P.3d at 630 (citing *State v. Jenkins*, 93 Hawai'i 87, 101, 997 P.2d 13, 27 (2000)) ("[I]t is not the province of the appellate court to reassess the credibility of the witnesses or the weight of the evidence, as determined by the family court[.]").

*detrimental to the best interest of the child[]."* Haw. Rev. Stat. § 571-46(7) (emphasis added). Furthermore,

> In making decisions regarding child custody and visitation, the paramount consideration for the Family Court must be the best interest of the child. *Doe v. Doe*, 98 Hawai'i 144, 155-56, 44 P.3d 1085, 1096-97 (2002); *see also In re Doe*, 52 Haw. 448, 453, 478 P.2d 844, 847 (1970). "[The] family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion." *Doe*, 98 Hawai'i at 154, 44 P.3d at 1095 (citations omitted).

*SC v. IC*, No. CAAP-11-0000398, 2012 WL 3555417, at *3 (Hawai'i Ct. App. Aug. 16, 2012). Father did not establish that the visitation awarded was unreasonable, and the court found, in any event, that the awarded visitation was in Child's best interest. That conclusion is supported here, where the Family Court found that:

> 40. Based on the Custody Evaluator's Report, Dr. Acklin's testimony at trial, and all of the other evidence and testimony offered to the Court regarding the custody and timesharing/visitation issues, the Court made the following findings:
>
> . . . .
>
> e. [Father]'s behavior can be described as unrelenting, aggressive criticism of [Mother], [Mother]'s family, and [Mother]'s cultural background. (Custody Evaluator's Report, Pages 43-44).
>
> f. [Father]'s attitude and behaviors create an atmosphere that will severely and negatively impact [Child's] relationship with [Mother], [Mother]'s family, and [Mother]'s culture as [Child] gets older. (Custody Evaluator's Report, Page 44).
>
> . . . .
>
> i. Joint legal custody is unlikely to be successful when there is high control, frequent harassment and police reports, and especially when there is one parent ([Father]) who is the prime initiator of the conflict and the other parent ([Mother]) is largely the reactor. (Custody Evaluator's Report, Page 49).
>
> j. The Court's award of temporary joint legal custody on November 6, 2013 was highly unsuccessful because of [Father]'s controlling and intimidating behavior towards [Mother], and [Father]'s unwillingness to work cooperatively with [Mother] on matters pertaining to [Child].
>
> . . . .
>
> l. In light of the fact that [Father]'s pattern of behavior towards [Mother] has not changed

7

> throughout the period of the parties' divorce,
> [Father]'s pattern of behavior is unlikely to change.
>
> m.    [Father]'s attitude and behavior toward [Mother]
> are detrimental to [Child].
>
> . . . .
>
> q.    It is in [Child]'s best interests for [Mother]
> to be awarded sole legal and sole physical
> custody, and for [Father] to be awarded
> reasonable rights of visitation.

The Family Court's findings that Dr. Acklin's report and testimony were credible, that Mother's testimony at trial was credible, and that Father's testimony at trial, where disputed by Mother, was not credible, were not clearly erroneous and thus the ultimate conclusion that they support - the change in Father's visitation schedule - was not wrong.

Accordingly, the Family Court did not abuse its discretion when it granted Mother sole legal and physical custody of Child, or in its setting of Father's visitation schedule.

> B.    The Family Court did not abuse its discretion when it imputed zero income for Mother in the CSGW upon which it relied in determining the child support owed by Father.

In his second point of error, Father alleges that the Family Court erred when it computed child support because it declined to impute any earnings to Mother until Child began attending preschool or child care on a full-time basis, even though the Family Court previously found that Mother was able to earn $15.50/hour, or $2,686/month as a certified nursing assistant. To this end, Father challenges FOFs 43 and 44 and COLs 5 and 14(e).

In reviewing the Family Court's order modifying child support obligations, FOF are reviewed under the clearly erroneous standard, *Child Support Enforcement Agency v. Carlin*, 96 Hawai'i 373, 378-79, 31 P.3d 230, 235-36 (App. 2001), while the trial court's COL are reviewed de novo under the right/wrong standard, *Raines v. State*, 79 Hawai'i 219, 222, 900 P.2d 1286, 1289 (1995).

"When the court establishes or modifies the amount of child support required to be paid by a parent, the court shall use the guidelines established under section 576D-7, *except when*

*exceptional circumstances warrant departure."* Haw. Rev. Stat. § 571-52.5 (2006) (emphasis added). "Courts of this jurisdiction have found 'exceptional circumstances' to encompass a broad variety of factual scenarios[,]" including a parent's inability to earn income. *P.O. v. J.S.*, 139 Hawai'i 434, 443, 393 P.3d 986, 995 (2017); *see* Haw. State Judiciary, *Hawai'i Child Support Guidelines 2014*, at 8-10, http://www.courts.state.hi.us/docs/form/oahu/child_support/child_support_guidelines.pdf (last visited Dec. 5, 2018) (detailing examples of exceptional circumstances).

Before considering whether exceptional circumstances warrant deviation, however, we first ensure that the Family Court utilized the CSGW to compute the support amount. *Id.* at 444, 393 P.3d at 996. "The guidelines may include consideration of . . . [a]ll earnings, income, and resources of both parents[.]" Haw. Rev. Stat. § 576D-7(a)(1) (2006). Accordingly, Line 1 of the CSGW solicits "Monthly Gross Income from all sources" for both parents.[3] *Hawai'i Child Support Guidelines 2014* app. A-1. Line 2 of the CSGW solicits "Monthly Net Income (from Table of Incomes)."[4] *Id.* apps. A-1, D

Despite Mother reporting a monthly gross income of $489.15 from her job as a certified nursing assistant on her January 16, 2015 Income & Expense Statement, the Family Court adopted the amount of $0.00 reflected in Mother's June 19, 2015 CSGW for her gross and net incomes. Although the Family Court did not explicitly explain how it reached Mother's income value of $0.00, it does not appear that the Family Court *ignored* Mother's previously reported gross income. Instead, it appears that the court disregarded a minute error in the entry for gross income because it was insignificant to the outcome of the computation of child support. Even if the reported amount of

---

[3]     Section V.J.1.a. of the child support guidelines defines "Gross Income" in part, as "including but not limited to . . . [e]mployment salaries and wages[.]" *Hawai'i Child Support Guidelines 2014* at 19.

[4]     Section V.J.4. of the child support guidelines explains how net income is calculated and section V.J.6. describes the various types of incomes that are listed in the Table of Incomes. *Hawai'i Child Support Guidelines 2014* at 21.

$489.15 were entered for Mother's gross income, the Table of Incomes, *Id.* app. D, reduced Mother's net income to $0.00 as is reflected in the CSGW, and the remaining computation on the CSGW remained unchanged.

Indeed, the record reflects that the Family Court expressly considered Mother's gross income as it noted in FOF 43, which is supported by substantial evidence,[5] that "[Mother's] gross monthly income is $489.15 (not including food stamps and child support)." The Family Court also explained in FOF 44, which is supported by substantial evidence as explained below, that "[f]ull time income should not be imputed to [Mother] until [Child] begins attending preschool or daycare on a full time basis"; in uncontested FOF 41[6] that "[Mother] is providing full-time care of [Child] during the weekdays when she has [Child] with her, and she is working part-time on the weekends when [Child] is with [Father] pursuant to the temporary timeshare order"; and in FOF 42, which is supported by substantial evidence as explained above, that "[Father's] unwillingness to cooperate with [Mother's] efforts to enroll [Child] in preschool has prevented [Mother] from doing so."

Taken together, the Family Court's explicit recognition of Mother's monthly gross income in FOF 43 and of Mother's limited ability to work because of her obligation to provide full-time care of Child in FOFs 41, 42, and 44 show that the Family Court did not simply ignore Mother's income, but rather, utilized the child support guidelines and provided a sufficient reason for its departure from imputing full time income to Mother. *Cf. P.O.*, 139 Hawai'i at 441-44, 393 P.3d at 993-96 (determining that the family court did not use the child support guidelines and erred in concluding that "exceptional circumstances" permitted departure from the guidelines as it made no mention of the guidelines in its FOFs and COLs, made no

---

[5]     FOF 43 is supported by the parties' income and expense statements filed January 16, 2015 and January 23, 2015, respectively.

[6]     Because Father does not challenge FOF 41 on appeal, it is binding on this court. *See In re Guardianship of Doe*, 119 Hawai'i 234, 242 n.12, 195 P.3d 701, 709 n.12 (App. 2008) (accepting unchallenged finding of fact as binding).

finding regarding the mother's income, and failed to identify any exceptional circumstances); *I.S. v. P.S.*, No. 30179, CAAP-10-0000082, 2013 WL 4458889, at *7 (Hawai'i Ct. App. Aug. 21, 2013) (remanding issue of husband's child support payments because family court made no findings as to why it imputed a certain amount of income to husband, did not indicate the reasons for husband's limitation to full-time employment or full earning capacity, and did not suggest or find that husband was purposely not seeking work).

HRS section 576D-7 provides that "[i]f any obligee parent (with a school age child or children in school), who is mentally and physically able to work, remains at home and does not work, thirty (or less) hours of weekly earnings at the minimum wage *may* be imputed to the parent's income." Haw. Rev. Stat. § 576D-7(a)(9) (emphasis added). The child support guidelines further provide, in relevant part, that

> **IMPUTED INCOME** *may* be used when a parent is not employed full-time or is employed below full earning capacity. The reasons for this limitation must be considered.
>
> *If a parent's income is limited in order to care for children to whom the parents owe a joint legal responsibility, at least one of whom is 3 years of age or younger, then no additional income will be imputed to that parent.*

*Hawai'i Child Support Guidelines 2014* § V.J.3. (emphasis added). Here, Child, born on November 12, 2011, was three-years-old at the time of the trial held in March 2015. The record, thus, supports the Family Court's decision to not impute full time income to Mother and supports FOF 44.

Against the Family Court's express consideration of Mother's monthly gross income and provided-reasoning for its decision to not impute full time income to Mother due to Father's unwillingness to cooperate with her, Father fails to show how the Family Court "disregarded rules or principles of law or practice to the substantial detriment of [Father] [and] . . . clearly exceed[ed] the bounds of reason" in determining the child support owed by Father to Mother. *See In re Doe*, 95 Hawai'i at 189-90, 20 P.3d at 622-23 (quoting *In re Jane Doe*, 77 Hawai'i 109, 115, 883 P.2d 30, 36 (1994)) (providing standard of review for family court decisions); *see also* Haw. Rev. Stat. § 571-52.5 (allowing

11

for departure from child support guidelines when exceptional circumstances warrant it). Therefore, the Family Court did not abuse its discretion when it decided to not impute full time income to Mother until after Child starts to attend preschool or daycare on a full time basis, and did not err in COLs 5 and 14(e).

C. The Family Court abused its discretion when it failed to explain how it divided assets and debts between the parties and in calculating the amount Mother owes for the Custody Evaluator's fee, but did not abuse its discretion in denying Father's request to be reimbursed for legal expenses related to his criminal case.

In his third point of error, Father alleges that the Family Court abused its discretion in denying his request to (1) divide the marital debt, (2) divide the Custody Evaluator's fee, and (3) require Mother to pay for Father's legal expenses related to his defense in FC-CR No. 13-1-1544. To this end, Father implicitly challenges COLs 10, 11, and 13.

In divorce proceedings, marital property is divided according to partnership principles, which distinguish between property brought into the marriage and property acquired during the marriage and which assigns category values based on these considerations. *Gordon v. Gordon*, 135 Hawai'i 340, 349, 350 P.3d 1008, 1017 (2015) (citing *Tougas v. Tougas*, 76 Hawai'i 19, 26, 868 P.2d 437, 444 (1994)).

The partnership model requires the family court to: (1) "find all of the facts necessary for categorization of the properties and assignment of the relevant net market values"; (2) "identify any equitable considerations justifying deviation from an equal distribution"; (3) "'decide whether or not there will be a deviation'"; and (4) "decide[] the extent of any deviation." *Gordon*, 135 Hawai'i at 350, 350 P.3d at 1018 (citing and quoting *Jackson v. Jackson*, 84 Hawai'i 319, 332, 933 P.2d 1353, 1367 (App. 1997)). A property division chart or similar document is recommended, although not required. *See Gordon*, 135 Hawai'i at 351, 350 P.3d at 1019 (citing *Higashi v. Higashi*, 106 Hawai'i 228, 230, 103 P.3d 388, 390 (App. 2004)) (emphasizing the value

of a property division chart in dividing property and affording transparency to the parties and to the reviewing court)).

      1.    The Family Court abused its discretion in denying without explanation Father's request for reimbursement of his Visa credit card debt and joint cell phone bill

Father asserts that the Family Court abused its discretion when it failed to attach a property division chart, or compute category values, in determining that it was equitable to require Father to pay the entire $34,500 Visa credit card balance, and the $190 cell phone bill.

The Family Court explained that Father should not be reimbursed for the credit card or cell phone bill because "he retained all of his interest and any appreciation thereon on his condominium, which was the marital residence." Father contended, however, that the property was worth less than his mortgage, and that the mortgage had been refinanced, in part, to pay off marital debt. Still, because neither the Divorce Decree; the May 28, 2015 Decision and Order; nor the FOFs/COLs issued by the Family Court listed the property's mortgage or net market values either at the date of marriage or close of evidence at trial, we are unable to meaningfully review whether the Family Court correctly calculated its overall property division or the distribution of the overall marital estate. *See Gordon*, 135 Hawaiʻi at 351, 350 P.3d at 1019 (stating that "[a] family court that chooses to ignore the sound recommendation [to use a property division chart or equivalent itemization] runs the risk that its decision will not appear 'just and equitable' to the reviewing court and the parties[,]" and holding that "[g]iven the numerous omissions of property categorizations and net market values in this case, the record is deficient to enable meaningful appellate review of the family court's distribution of the marital estate"). Therefore, without more, the Family Court abused its discretion when it denied Father's request for reimbursement of his Visa credit card balance and cell phone bill.

2.	The Family Court abused its discretion in determining without explanation the ratio in which Father and Mother split the Custody Evaluator fees.

Father asserts that the Family Court abused its discretion in not ordering Mother to reimburse him for half of the Custody Evaluator fee, which he maintains constituted marital debt. We agree that the Family Court abused its discretion in determining the amount which Mother should reimburse Father for the Custody Evaluator fee, but on different grounds.

Here, the Family Court made a valid departure from the partnership model, reasonably concluding that the Custody Evaluator's fee should be divided "in proportion to the parties' gross monthly incomes (imputing full time income to [Mother]), which is 80%/20% ($8,267.58 for [Father], as reported in his Income & Expense Statement filed January 22, 2015, and $2,686.00 ($15.50/hr.) for [Mother])"; rather than an equal split. *See Gordon*, 135 Hawai'i at 353, 350 P.3d at 1021 (determining that "deviation from the partnership model should be based primarily on the current and future economic needs of the parties rather than on punishing one party for financial misconduct."). However, per the provided-values of Mother's and Father's gross monthly incomes, and in accordance with the court's explanation of what it was trying to accomplish, the correct ratio appears to have been 75%/25%.[1] Accordingly, although the Family Court did not abuse its discretion in deviating from partnership principles, the Family Court abused its discretion in determining, without further explanation, the amount that Mother should reimburse Father for the Custody Evaluator's fee.

3.	The Family Court did not abuse its discretion in denying Father's request regarding Mother's payment towards the legal expenses that Father incurred in defending his criminal case

Father argues that, based on marital waste, partnership principles, and/or equitable deviation, Mother should pay for all

---

[1]	The total of Father and Mother's incomes is $10,953.58 ($8,267.58 for Father + $2,686.00 for Mother). After dividing Father's income of $8,267.58 by $10,953.58, and multiplying by 100, it appears that Father's ratio would be approximately 75%, and Mother's would be approximately 25%.

14

of Father's legal expenses incurred in defending FC-CR No. 13-1-1544.

Father contends that his legal expenses should be treated as part of the marital estate, and should be assessed against Mother, as the spouse responsible for waste, because the false charges "caused a reduction of the dollar value of the marital estate." The Family Court was correct, however, in concluding that the "case was brought by the Prosecutor of the City and County of Honolulu, not [Mother]"; see Naluai v. Naluai, 99 Hawai'i 363, 368, 55 P.3d 856, 861 (App. 2002) ("Ultimately, it is within the discretion of the prosecutor to prosecute such alleged crimes."). Therefore, Mother did not waste marital assets and Father's first contention is without merit.

Father alternatively contends that the Family Court should have applied partnership principles and ordered Mother to share equally in Father's defense costs and fees. That alternative is without merit for the same reason as explained with regard to Father's first alternative.

Father next contends that although the legal expenses are subject to the partnership principle of sharing equally in debt, the Family Court should have made an equitable deviation based on the alleged falsity of Mother's criminal charges. However, Father fails to point to any case or statutory law that would support a conclusion that the Family Court abused its discretion in not determining an equitable deviation in favor of Father with regard to his defense costs and fees under the circumstances. His last contention is therefore without merit.

Therefore, the Family Court did not abuse its discretion when it denied Father's request for reimbursement of his attorney's fees and costs incurred in defending FC-CR No. 13-1-1544.

IV. DISPOSITION

Based on the foregoing, we vacate that portion of the July 28, 2015 Decree Granting Absolute Divorce and Awarding Child Custody regarding marital debt and reimbursement of the custody evaluator fees, and remand the case to the Family Court to

recalculate to the extent necessary and to further explain its conclusion with regard to marital debt and reimbursement of custody evaluator fees, and for further proceedings consistent with this Memorandum Opinion. We affirm in all other respects.

DATED: Honolulu, Hawai'i, January 28, 2019.

On the briefs:

Peter Van Name Esser
for Plaintiff-Appellant.

Kevin S. Adaniya
for Defendant-Appellee.

Chief Judge

Associate Judge

Associate Judge